Good morning. Good morning. May it please the Court, I'm Andrew Wesley, and I represent the plaintiff in this case, Mark Schwartz. I'd like to request that any time remaining in my main argument be reserved for rebuttal. All right. Thank you. The district court granted the government's motion to dismiss this lawsuit for lack of subject matter jurisdiction under Rule 12b-1. We're here this morning on Mr. Schwartz's appeal from that judgment. I'll be arguing this morning that if a final order of forfeiture extinguishes residential tenancy rights, as the government argued in its motion, then the district court should have applied the summary judgment standard in deciding that motion on the critical issue of whether the Southern District of New York's forfeiture order as to 704 North Point Street in San Francisco covers 1301 Columbus Avenue where Mr. Schwartz lives. Counsel, just so that I understand what we're talking about, were there three separate premises that were involved in this building? Yes. Attached to the excerpts of record, as part of the excerpts of record at pages 15 and 16 are a few color photographs. I've blown them up this morning so that we can have a visual of what we're talking about here. This is 704 North Point. It has an address in the front, 704 North Point. There's a structure there. This is where Mr. Schwartz lives. I know in perfect worlds it would be gigantic. There's a number there. It says 1301. This is Columbus Avenue. There's his door. There's his apartment. Because this was a permanent lockout by the government and we weren't allowed discovery, this was a subject matter jurisdictional motion, I was at a decided disadvantage as far as being able in discovery to get access, to see what the actual structural configuration of the premises is. But the record does reflect that there were three separate addresses. Three separate addresses for sure. In fact, there were four separate addresses. There's 1301 Columbus, 1303 Columbus. There's in the excerpts of record a photograph of 2701 Leavenworth and then 704 North Point. And the order of forfeiture mentions 704 North Point. It doesn't mention any other address. But was the apartment on that lot? The apartment was at 1301 Columbus. Was it on that lot, though? It was on that lot. Okay. So that's undisputed that it was on that lot. Although. Just a second, because I want to get to the other arguments then. But you started with this one, so it seems to me. Actually, I started with this one. Oh, I'm sorry. I'm sorry. I'm just trying to figure out, you know, if it's on the lot and given the broad language of the forfeiture order, facts about the mailboxes and the keys and entrances, I'm just trying to figure out how, you know, the argument is that it's beyond the forfeiture order. I understand, Your Honor. So taking a step backwards, on that lot is subject to interpretation. The government's argument is that there are four premises addresses covered by one complex. It's certainly not the way the property is configured. There are four street addresses. On that lot is the government's argument. There's one property. It's called 704 North Point, and 1301 Columbus is on that lot. So are you disputing that that property was subject to the forfeiture order from the Southern District of New York? Exactly right. The leasehold, you're saying. Right. There are two main issues to address on that point. Mr. Schwartz was a residential tenant. And under San Francisco eviction protection law, Mr. Schwartz would have been protected from eviction absent one of the enumerated reasons in the law. Forfeiture by a property owner is not one of them. In any event, Mr. Schwartz, at a minimum, under California law, would have been entitled to 60 days' advance written notice of any attempt to terminate his tenancy rights, and that never happened here. But do you think that the federal government was obliged to give him notice separate and apart from the notice that was given to the owner of the lot? The notice that was given was left in a mailbox by the government's owned admission at this property, 701 North Point. Mr. Schwartz, at 1301 Columbus, had his own mail receptacle. It was never left there. It wasn't posted. There would have been no reason for a tenant who might have even seen a notice addressed to 704 North Point which alerts the public that the government is seeking clear title to property. There would have been no reason for a residential tenant to even intervene to save their residential tenancy rights. Clear title does not ---- But you don't dispute the government gave all the other notices, I mean, putting in the paper and everything else, right? Right. The government ---- Okay. So, and I understand that your client, you know, is arguing that he didn't get notice. I understand the basis for that argument. But when he did find out, I'm just trying to figure out, did he file for Rule 60B, motion to reopen the ancillary proceedings as soon as he found out? When he found out ten months after the fact. It doesn't matter. And he did not intervene in the ancillary proceedings. Did he try to petition with the Attorney General to try to get relief? Because there is a basis for that within the statute. I understand. He did file a tort claim. We did. But did he petition specifically with the Attorney General as is allowed under the statute? He did not. Okay. So he files the tort claim. That's correct.  The final order of forfeiture doesn't mention 1301 Columbus. And when we alerted the government that a terrible mistake had happened here in that they mistakenly had changed locks to a premises other than 704 North Point, they were adamant that the order covered 1301 Columbus. We submit that the forfeiture court would have even lacked jurisdiction to entertain Mr. Schwartz's claim. He lives at a different property. The forfeiture court only has jurisdiction over property subjects of forfeiture. Well, which would have – which is what gives you standing to pursue your eviction and your lockout. I don't believe that. And if you don't have standing, then how can you pursue that? So – but let's talk about the negligence. All right? Well, Your Honor, that's exactly – so these issues are exactly why the district court should have applied the summary judgment standard, because it begs the question. I'm not really sure the summary judgment would have helped you, but just bear with me on that. Of course. So let's talk about whether or not this action is foreclosed, or putting aside whether or not this action is foreclosed, let's talk about why your client is not separately barred by the doctrine of sovereign immunity. Well, under Section 2680 – And I guess specifically, hasn't this Court applied the detention of goods exception to permanent seizures before, especially in the case that I'm looking at, is United States v. 149,345? There are a couple of arguments in response to that. The Sixth Circuit specifically – and if I can quote from the Sixth Circuit's decision – The Sixth Circuit in which decision? The Sixth Circuit's decision in the Kerinsky case. The Sixth Circuit specifically, head-on, addressed specifically a detention versus a seizure situation. And the Sixth Circuit, if I can read a couple sentences, said, Congress chose to use the word detention instead of the word seizure. A detention is generally associated with a period of temporary custody, whereas a seizure, on the other hand, must be viewed as a term of art. Had Congress intended to accept from the reach of the FTCA damages arising out of seizures, we believe it would have said so. Instead, Congress elected to use the word detention. And I don't believe the Ninth Circuit has confronted head-on the distinction between temporary detention and permanent seizure. And interestingly, the Ninth Circuit, though, in the Gesho case, which is addressed in the government's supplemental authorities and in our response, the Ninth Circuit has acknowledged the distinction between detention of goods and detention of people. And that's what happened here. Mr. Schwartz was detained permanently, locked out of his home of 25 years. No notice. The district court should have at least given him an opportunity on the facts to present his case on every issue, including whether the final order of forfeiture even covers the 1301 Columbus Avenue where he lived. I don't think you answered my question on 149,000. How do you distinguish that? I'm sorry. I don't have that case in front of me. I apologize. The district court specifically acknowledged that. So if you can't distinguish that case, does that mean that sovereign immunity bars your client's claim? This was a permanent seizure, not a temporary detention. I'll take one second. I'm sorry. No, it is not, because the fundamental issue in this appeal is whether the forfeiture order even covered the property where Mr. Schwartz lived. Because if the government, in its own reliance upon an order of forfeiture, locks him out of his home and the order doesn't even apply to that property, I don't know how it can be argued that that's a detention of goods as opposed to a permanent lockout. The government, in its argument that the property consists of four separate – is a complex comprised of four separate property, completely sidesteps – and we've got nothing in the record at all to explain why those other properties weren't listed in the forfeiture proceedings, why the government never listed that in its notice that it put in the mailbox at 704 North Point, to put the onus upon a residential tenant to read that clear title to a property at 704 North Point is at issue and expect that residential tenant to jump on it and interpret that it not only implicates their address at 1301 Columbus, but also their residential tenancy rights is not consistent at all with the criminal forfeiture statute. The criminal forfeiture statute deals with clear title to the property. Mr. Schwartz's residential tenancy rights did not in any way impede clear title to the property. The property could have been transferred with every residential tenant still in occupancy and title would still have been clear. He was not challenging anybody's clear title to property. He would not – there was no reason for him to challenge it. As a residential tenant, he was not a challenge to clear title. No residential tenant would be. If you want to say it's time for rebuttal. I would like to. Thank you, Your Honor.  Thank you, counsel. May it please the Court. Mark Conrad, Assistant U.S. Attorney on behalf of the United States. I'd like to cover three points with the Court this morning. The first is the relationship between the apartment in which Mr. Schwartz lived and the forfeiture order. The second point relates to why, as a result of that relationship, the forfeiture statute, and specifically subsection K of section 853, title 21, bars plaintiff's claims in this case. And then the third point is why, even if the Court disagrees with me on that, plaintiff's claims in this case.  claims in this case. So let's start with the property. I understand, Judge Rawlinson, you had some questions about that. This is one parcel of land. And to the extent that the Court needs clarification on that, there is a recorder assessor's map that is not in the excerpt of the record but was submitted to the district on the east by Leavenworth and on the north by Columbus. All of the buildings and structures and units and apartments, they're all located on that parcel of land. Does it matter that there were different addresses? It makes no difference whatsoever. And the reason the reason why is because the forfeiture order doesn't speak to addresses or units or apartments or the bed and breakfast at 704 North Point. It speaks to a parcel of land. But weren't there addresses included in the documents that were submitted to the forfeiture court? There were a number of documents submitted to the forfeiture court. Did any of those documents include the individual addresses that were located on the parcel? I know that the 704 North Point address was the address. Is it your representation that none of the other addresses were included in the documents that were submitted to the forfeiture court? I'm not aware of any of the forfeiture court being notified of any other addresses other than 704 North Point. I didn't say notified. I asked you if there were any documents that were submitted to the forfeiture court that contained the separate addresses. Not that I'm aware of, Your Honor. And if there were documents that were submitted to the forfeiture court that indicated that there were separate addresses, would the government have the obligation to give notice to those individuals who resided at those premises? Well, no. Why not? Because the 853 speaks to the government's obligation to provide notice. And what it says is that the government has to publish notice, which the government did here, both in New York and in San Francisco in publications of general circulation. And second, the government may provide direct written notice to persons known to it to have an interest in the property. So the government must publish notice, but the notice that was published was only for the address, which is 704 North Point Street, whereas Mr. Schwartz's address is 1301 Columbus Entrance. So was he given notice even by publication? Not with respect to the 1301 Columbus Address. However, I believe I would have to go back to the Southern District of New York filings. But the language of the forfeiture order was what was put into the notice, and that notice states that what's being forfeited is the lot or parcel of land located at that address. Together with its buildings, appurtenances, improvements, fixtures, attachments, and easements located at 74 North Point Street, San Francisco, California, 94109, and then in parentheses, the North Point property. Correct, Your Honor. So that's the only property that was there. I mean, that address was the only address that was referenced. That is the only address that was referenced. But the way that the North Point property is defined in the forfeiture order is to include the building where tenant resided. But is there a building located at 704 North Point Street? And if it – there is in this building at 957th Street, the Ninth Circuit Courthouse, there's a street address of 957th Street. Over here, there's a separate entrance for the court's personnel and for the judges that actually has a separate number on it that says 2680 Mission Street. If this courthouse were forfeited in a criminal proceeding, there's no question that the judges' chambers and the court staff work areas would go along with the building. That's what happened here. We are not – Before we leave that point, counsel, didn't the government represent to the forfeiture court that it had complied with the notice requirements and provided direct written notice to any persons known to have any alleged interest in the specific properties, plural? That was the representation provided by the AUSA in the forfeiture court in the criminal proceeding. Well, there wasn't – well, but it wasn't that the premise under which the forfeiture was undertaken, that direct notice had been given to anyone who had an alleged interest in the specific properties? That was the representation on which the court ordered the forfeiture, yes. Was that accurate? Yes, because the AUSA at that time did not know that 1301 Columbus was a separate address on the property. Why would it be plural? Instead of singular then? Excuse me, Your Honor? Why would it reference plural? It says to any persons known to have an alleged interest in the specific properties. If it were just 704, it would say property. I understand Your Honor's question. Because there were four separate properties subject to forfeiture. There was two in San Francisco. There was one in the Cayman Islands. There was one elsewhere. So there were multiple properties at issue in the forfeiture proceedings. Do you read the district court's opinion as saying that Schwartz should have brought this tort claim within the ancillary proceedings? I understand the district court's opinion as holding that, two things. First, that to the extent he is asserting an interest in the property, he was required to assert that interest in the ancillary proceedings. And second also, that his tenancy interest in the building was extinguished as a result of the forfeiture. But how can that be true if he was not claiming an interest that was superior to that of the owner of the property? Because the forfeiture statute doesn't limit the persons who are required to participate in the forfeiture proceedings to people who will prevail in the forfeiture proceedings. The forfeiture statute speaks very broadly. There are different subjects, subsections. Subsection K says anyone with an interest in property that is subject to forfeiture has to go to the forfeiture court. How would they know to do that if they weren't given notice? I understand the court's problem with notice, Your Honor. It would be better if Mr. Schwartz had received direct written notice. He didn't. He received the notice that was statutorily required. And I just want to say that. What's troubling to me is it appears to me that the forfeiture court was under the impression that direct notice had been given to everyone who had an interest in the property, and that was the basis for the forfeiture. And therefore, it would have, in my view, Mr. Schwartz should have been given the opportunity to prove that he did not get that direct notice as a matter of due process. Now, I want to raise three points very briefly. First, when Mr. Schwartz actually received notice of the forfeiture, in other words, when he went home and found his door locked, he could have participated in forfeiture proceedings in New York. As Judge Mergia noted, Rule 60b would have allowed him to go back to the forfeiture court, file a motion, reopen it, say, I didn't get notice, I'd like to be heard. Now, the government contends that he would have lost in that proceeding, that the fact that his tenancy interest would have been extinguished. But to the extent he wants to assert that interest, his forum was in New York, not in the spirit of a separate civil action here. The fact that he didn't get notice does not mean that he may avail himself of procedures that were never available to him to begin with. So if you were to agree that he didn't get the proper notice, you're saying that his remedy would have been to go back to New York and try to seek to reopen the forfeiture proceedings? Either that or to petition the Attorney General for relief. Those are the two avenues available. Separately and independently from the forfeiture statutory scheme that allows him those two different avenues, one judicial and one administrative, the FTCA expressly bars him from bringing the types of claims that he's brought here, and that's 2680c. The briefing, I think, could have been clearer on this point. I was trying to anticipate a number of arguments that might have been raised in objection. But let me just be very clear about what the government's position is here. 1346 creates a very broad waiver of immunity for the United States, and then 2680 imposes a number of exceptions. The exception at issue here is c, and under that you can't see it. Kagan. So do you agree, before you go into this, because I think I know where you're going, but do you agree that the negligence claim is not foreclosed by the final forfeiture order? It's for the property inside the apartment. Oh, I understand. Well, so I understand if the Court reads the negligence allegation, they relate both to the alleged negligence as well. How is the negligence claim foreclosed by the final forfeiture order? It's not with respect to his personal property located inside the apartment. That's covered by 2680C, Your Honor. Okay. And you say that's barred as well because? Because 2680C, the plain language of the statute, precludes claims against the United States, quote, arising in respect of the detention of any goods, merchandise, or other property. The foster case out of the Ninth Circuit. Was this property detained? Yes. It was left there. How was it detained? It was detained because the marshal's service locked him out and kept custody over the parcel of land and everything inside it. So it was being detained by the marshal's service. That's a stretch. Well, I don't believe so, Your Honor. I believe whenever the the. They gave him access to it three times. Excuse me, Your Honor? Didn't they give him access to it three times? They did give him access to it three times. They, on first time. But the stairs were in disrepair, so he couldn't move the furniture down the stairs. I think the record reflects excerpts of Record 31 that Mr. Schwartz was, could be described as a hoarder and there was a lot of stuff in this apartment and that he couldn't get all his stuff out in a timely fashion. But he was given three opportunities to get in and get his stuff out. Regardless, this was a detention of property. They were detaining the real parcel of land. They weren't detaining Mr. Schwartz. This might give rise to a false arrest claim or something like that. No, but if they were detaining his property, generally, if the government is detaining property, it secures it so that it can't be damaged or taken. And I believe the government did make reasonable efforts to secure this property. What the record reflects is that locks were placed on each of the units, each of the doors, at the two Columbus Street addresses, at the Leavenworth address, at the North Point address, to make sure that that property was secure and the things inside it were kept safe until a plaintiff could get them all out. Those are factors to be considered in a motion for summary judgment, not in a motion to dismiss it. But the plain language of 2680C covers the detention of property. This was a detention of property. Well, that's the question. It wasn't a detention of property. And Mr. Schwartz should have the opportunity to say that his property wasn't covered. And so that's the problem I have with this case, is that we're seeking to foreclose Mr. Schwartz from having the opportunity to establish that his premises was not part of the forfeiture order. And I'm not sure that the forfeiture statute includes it because he's not really asserting an interest in the property that would take precedence over the owner's interest. So it's kind of a really difficult procedural issue to me. But it just seems that we should, in the interest of due process, I don't see how we can foreclose someone from making a claim that they were not given adequate notice under the law to protect their own property. In terms of due process, Your Honor, there are still avenues available to Mr. Schwartz. There is no time limit with respect to a petition to the Attorney General for permission of mitigation of forfeiture. Rule 66. Ginsburg. But if the Attorney General has already indicated that it would not be successful. That's not the question. We believe his claims wouldn't be successful here, either. The question is, is. Well, I wouldn't make that prediction if I were you. I understand the Court's position. The question for this Court, however, is where those claims may be brought. And Section 853 clearly says that to the extent he's asserting an interest in forfeited property, it has to go to New York. To the extent that he's asserting tort claims, these claims unquestionably relate to the detention of property, and so they're barred by 2680C. I want. So you're not disputing that Mr. Schwartz owned the personal property within the apartment? No. The only two final points, if I may. Also, you just have a little time. How would you propose? I mean, would we do this under a forfeiture theory or under the Federal Tort Claims Act, Lacta Sovereign? The Court. No jurisdiction. Each one of those two statutes separately and independently bars the plaintiff's actions in this case. I think, as Your Honor pointed out, the 2680C captures everything, including the personal property inside, so that may be the universe of the case. I think the forfeiture statute captures everything except potentially the personal property, so maybe the Court would need to invoke 2680C to address the personal property in the unit. But in closing, two points. The first is the tenants can and do make use of the forfeiture court's proceedings. We cited a case called Stazola, which is a Third Circuit case. The site is 893F, second 34. And in that case, the tenants lost, and in the briefs, appellant describes the analysis of the Third Circuit in that case about why the tenants lose. But that analysis sort of misses the forest for the trees. The point here is that 853 is available as a procedural mechanism for tenants to assert their interests. I would also point the Court to a case in which a tenant asserted an 853 claim and won in the district court. It was a commercial tenant. It was Wal-Mart, and it was in the District of Puerto Rico. It was not cited in the party's brief, but if I could point the Court to 726F, second 61, that illustrates that tenants with unrecorded leases can and do invoke the forfeiture proceedings to have their interests resolved. So, counsel, does your argument under Section 2680 rest on the premise that Mr. Swartz's claim was subsumed in the forfeiture proceeding? I'm sorry. I'm not sure I understood your other question. Does your argument under the Federal Tort Claims Act rest on the idea that his claims were included in the forfeiture proceeding? Why not? No, it doesn't. Because regardless of whether the forfeiture court was the exclusive proceeding, as we think it is under 853K, the statute, FTCA, independently bars him from bringing these types of claims under the FTCA. How about C-1 said that it has 1, 2, 3, and 4 under there that then talks about forfeiture proceedings? So it may be helpful to take a step back and talk about the structure of the FTCA. 1346 provides a very broad waiver of immunity. It renders the United States liable under circumstances where a private party would under the local law. 2680 then carves out exceptions and reimposes, reestablishes immunity for the United States. And subsection C does that with respect to all claims arising out of the detention of property by law enforcement. And then it says if. And it says, but, 1346 still applies if 1, 2, 3, and 4. Right. If the property was seized for the purpose of forfeiture. So how does that relate to your argument that the 1, 2, 3, and 4 were included in the statute and were added to the statute in 2000 as part of the Civil Asset Forfeiture Reform Act, or CAFRA, of 2000. Those four statutory revisions apply only to civil forfeitures, not to criminal forfeitures such as the one at issue in this case. This is undisputedly a criminal forfeiture. The appellant, in fact, doesn't even invoke the CAFRA provisions. We mention them only in anticipation in our answering brief. And so those 1, 2, 3, and 4 simply don't apply to this case. I see that my time is up. If I may briefly respond to counsel's assertion on the Kerensky case, and I ask Judge Navarro, it looks like you may have a question. No. I'm still wondering how the negligence action is barred and whether or not it survives. So that's why I'm just looking at you. That was my question, too, about 2680, the answer to the forfeiture proceeding. I'm not sure I'm getting your distinction, but we'll figure it out. But I would like to hear your response on the Sixth Circuit case. Sure. Kerensky was a case decided in 1994 by the Sixth Circuit. And the question in that case was, what does it mean for the statute to impose immunity for detentions by any law enforcement officers? And so the language that counsel just read to this Court regarding detention versus seizure was an effort by the Sixth Circuit to parse that statutory language. And at the end of the paragraph, which counsel didn't read, the Sixth Circuit went ahead to hold. Instead, Congress elected to use the word detention, and to be consistent with this language, Section 2680C must be read as only applying to law enforcement officers engaged in activities with a nexus to the collection of taxes or customs duties. That holding was overruled directly by the United States Supreme Court in Ali v. Federal Bureau of Prisons, where the United States Supreme Court said any law enforcement officer means just what it says. And in fact, in footnote 1 of the Supreme Court's decision, they cited the Kerensky case as one of the cases they were overruling. It's not good law. Ginsburg. Did their case define detention of goods? No. The Court, it didn't. The Court, we submitted two cases in our 28J letter to the Court where the Gaucho case and the Norwood case by Judge Posner out of the Seventh Circuit were the both of which stand for the proposition that a seizure, permanent seizure, is a detention within the meaning of that statute. Thank you, Your Honor. Your bottom. Counsel, at some point, would you please address the interplay between the forfeiture action and 2680, whether or not the claims are barred nevertheless by the Federal Tort Claims Act, the negligence claims? Certainly. In this case, unlike most 2680 immunity disputes, the government had a double connection with the property. One was when they purported to have executed on an order of forfeiture, and the other  And as new owner of the property, the government assured Mr. Schwartz, way after any argued detention occurred, execution of an order of seizure, that he'd be permitted to come back and get his property on a couple of occasions, a few occasions. And on one of those occasions, despite the government's agreement with him that he'd be permitted to get his property, the place was ransacked. And so the definition of detention is important on the negligence claim. The government at that point was the owner of the property. And as owner of the property, they had a new set of responsibilities to him. They could have told him, you're out of luck, go, you know, file your claims. But they didn't. They told him that he would be allowed access to get his property. And any arguments that they are therefore immune, they could have left the place unlocked, they could have stolen it themselves, is not what 2680 and the congressional intent of 2680 detention of property is about. Counsel, as a practical matter, what do you hope to gain from this appeal? What is it that your client wants at this point? Mr. Schwartz wants to have his day in court. He was thrown out on a jurisdictional motion where the court concluded factual matters that there was never an opportunity to develop. There's no – there's a genuine issue as to those issues. This morning, Mr. Conrad made a statement. He made a comparison about separate addresses here at this courthouse. That's not what happened in this case. All right. So bottom line is he can't get the apartment back. Oh, title was transferred from the government to a third party soon after the lockout. So what does he want in concrete terms? He wants the opportunity to pursue his tort claims on account of the illegal lockout. He wants the opportunity to address the issue as to whether the order of forfeiture even covered residential tenancy rights, covered this property. He just wants to reset the starting gate. So let me ask you this. If once he became aware that the property had been forfeited, he did not seek administrative relief or relief in the New York court, why isn't he barred from making those arguments now? Well, so far we've discussed this morning the manner in which the notices were posted in the newspaper, put in the mailbox. But it's the substance of the proceedings and the substance of the order that's important. And I respectfully submit this morning that the forfeiture court would have been without jurisdiction to entertain his claims as to a property that wasn't covered by the forfeiture proceedings. The forfeiture proceedings are very clear as to which address they pertain to. There was no hidden secret underground apartment here that Mr. Schwartz came out of a bunker. It says, right, that that's his apartment. There are photographs. There's a street address. The government could have listed it, didn't list it. And very tellingly, Your Honor, in excerpts of record at 32, in the e-mail from Deputy U.S. Marshal McCloud on page 32, his post lockout notes, he specifically says that we will make arrangements to change the locks at 1303 Columbus. It's very clear. And so the government's position that there are four properties and they're all subsumed under 704 North Point, and when the U.S. Marshal went out that day and changed locks, everything, you know, went into the toilet, the U.S. Marshal's own notes on that issue contradict that position. Excerpts of record 32, first paragraph at the top, he talks about encountering the tenants from 1303 Columbus. Those locks had not been changed. And upon further reflection, he's going to go ahead and change the locks. I think there's an indication, the implications can be made. Of course, we had no opportunity in discovery to develop the issue. But it appears that when the government came on out and changed the locks, they were confused themselves. They were reading an order. It said 704 North Point. Suddenly, somebody's making a claim to 1301 Columbus. People are making claims to 1303 Columbus. The government made a tactical decision on that spot, which happened to be the wrong decision, which was to go with it and to change the locks on 1301 and 1303 Columbus. And then, despite the fact that Mr. Schwartz pointed out to the government, here's my apartment, it's 1301 Columbus, there it is, there's the flight of steps, there's no interior connection. The government stood its ground, took over as his landlord, made commitments to him about retrieving his property. And now argues that he should have gone to the southern district of New York on a forfeiture proceeding related to a completely different property where the substance of the notice doesn't say anything about residential tenancy rights. All right. Thank you, counsel. Thank you very much. Thank you to both counsel. The case, as argued, is submitted for decision by the court.
judges: Navarro, Rawlinson, Murguia